## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
       **Plaintiff,**

  **v.**                                           **Case No. 06-CR-140**

**ARTIS ECHOLES**
       **Defendant.**

---

### SENTENCING MEMORANDUM

Defendant Artis Echoles pleaded guilty to distributing heroin, 21 U.S.C. §§ 841(a)(1) & (b)(1)(C),[1] and I set the case for sentencing. In imposing sentence, I typically follow a three-step procedure: (1) determine the advisory sentencing guideline range; (2) decide whether to grant any departures pursuant to the Sentencing Commission's policy statements; and (3) select a sentence that is sufficient but not greater than necessary given all of the factors set forth in 18 U.S.C. § 3553(a). E.g., United States v. Cull, 446 F. Supp. 2d 961, 962 (E.D. Wis. 2006); see also Rita v. United States, 127 S. Ct. 2456, 2465 (2007) (stating that the sentencing judge will normally begin by considering the PSR and the guidelines, then hear arguments for departures under the Commission's policy statements and/or a non-guideline sentence based on § 3553(a)). I followed that procedure in the present case, granting the government's departure motion under U.S.S.G. § 5K1.1 and imposing a sentence of 5 years probation under § 3553(a). This memorandum contains the reasons for the sentence imposed. See 18 U.S.C. § 3553(c).

---

[1] The government also charged defendant with participation in a heroin distribution conspiracy but permitted him to plead guilty to a single count of distribution.

## I.  GUIDELINES

The pre-sentence report ("PSR") set defendant's offense level at 18 (base level 24, U.S.S.G. § 2D1.1(c)(8), minus 3 for mitigating role in the offense, § 3B1.2, and minus 3 for acceptance of responsibility, § 3E1.1) and his criminal history category at V, producing an imprisonment range of 51-63 months.  Neither side objected to the PSR's calculations, which I found correct and accordingly adopted.

## II.  DEPARTURE

### A.  Factors

In ruling on a downward departure motion based on substantial assistance, I consider:

(1) . . . the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1(a).

I give substantial weight to the government's evaluation of the extent of the defendant's assistance, U.S.S.G. § 5K1.1 cmt. n.3, but the extent of the departure is within my discretion. In attempting to quantify the departure, I typically use the method suggested by the Seventh Circuit of granting something on the order of a 2-level adjustment for each factor found to be fully present, with a lesser reduction for those factors partially present.  United States v. Matthews, 463 F. Supp. 2d 916, 918 (E.D. Wis. 2006).

2

**B. Analysis**

Defendant agreed to cooperate a few weeks after his arrest, debriefing about the others involved in the conspiracy, including Greg Jackson, Jeffrey Person, Ryan Pierangeli, Mark Garbo and Lee McGee. The government turned his debrief over in discovery, and all of the other defendants in the case eventually pleaded guilty. Because Jackson and Afolabi – both higher up in the conspiracy than defendant – came in earlier, the government considered defendant's information generally useful but probably not critical in securing pleas from the co-conspirators. However, defendant also provided information about Courtney and Allen Wainwright, who were also obtaining heroin from Afolabi. Defendant and other cooperators provided sufficient information to allow the government to indict a historical case against the Wainwrights. A jury convicted Courtney Wainwright, and defendant testified at that trial. Based on this cooperation, the government asked for a reduction of 30-35%.

Under the first § 5K1.1 factor, I awarded 2 levels because defendant's information was significant and useful in securing convictions in this case and the Wainright case. I accepted that the cooperation of others was a factor in both, but defendant was responsible at least in part for numerous convictions of heroin traffickers in two cases. I also awarded 2 levels under the second factor, because the government found defendant's information truthful and reliable, as apparently the Wainright jury did as well. Under the third factor, I awarded 2 levels because the nature of the cooperation extended beyond the provision of information; defendant also testified at a trial. I awarded no reduction under the fourth factor, as the record contained no evidence of any particular danger or risk. Finally, I awarded 1 level under the fifth factor because defendant agreed to cooperate shortly after his arrest, although there was no evidence that the timing was particularly significant, as Jackson and Afolabi were already

3

cooperating. Therefore, I granted a total reduction of 7 levels, making the revised range 24-30 months.

### III. SECTION 3553(a)

**A.    Factors**

In imposing the ultimate sentence, the district court must consider all of the factors set forth in § 3553(a). United States v. Harris, 490 F.3d 589, 593 (7th Cir. 2007), cert. denied, 128 S. Ct. 963 (2008). Those factors include:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the advisory guideline range;

(5)    any pertinent policy statements issued by the Sentencing Commission;

(6)    the need to avoid unwarranted sentence disparities; and

(7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The statute requires the court, after considering these factors, to impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing – just

4

punishment, deterrence, protection of the public and rehabilitation of the defendant. Id. In determining a sufficient sentence, the district court may not presume that the guideline sentence is the correct one. Rita, 127 S. Ct. at 2465 (2007); United States v. Demaree, 459 F.3d 791, 794-95 (7th Cir. 2006), cert. denied, 127 S. Ct. 3055 (2007). Rather, after accurately calculating the advisory range so that it "can derive whatever insight the guidelines have to offer, [the district court] must sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence." United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007); accord United States v. Wachowiak, 496 F.3d 744, 749 (7th Cir. 2007); United States v. Schmitt, 495 F.3d 860, 865 (7th Cir. 2007).

**B.    Analysis**

    **1.    Nature of Offense**

Defendant joined a heroin distribution conspiracy headed by Greg Jackson and supplied by Kazeem Afolabi. The parties agreed that his role was mitigated: he primarily purchased heroin from Jackson to support his own habit, then distributed some of it to others, including his wife, also an addict. The specific offense of conviction arose out of a controlled buy of 2 grams of heroin in September 2005. The parties agreed that defendant did not profit economically from his involvement buy rather participated to feed his own addiction. He had little contact with the other conspirators and played no significant role in furthering the overall conspiracy.

    **2.    Character of Defendant**

Defendant was forty-eight years old and had a serious prior record, with convictions for possession of a dangerous weapon, possession with intent to deliver, party to the crime of

5

cocaine delivery, drug possession, disorderly conduct, and obstructing and resisting an officer. He dropped out of high school and until recently had no employment record to speak of; as alluded to above, he also developed serious substance abuse issues, using marijuana, cocaine and heroin regularly for much of his life.

However, since his arrest in this case in June 2006, defendant effected a remarkable turn-around. After a lifetime of drug abuse, he stayed clean for nearly two years. He participated in counseling at Genesis as part of his pre-trial release conditions, and his counselor reported that he had an optimistic attitude. He also consistently worked for the first time in his life, holding a job as a machine operator for about a year and a half. His employer wrote a positive letter, describing defendant as a "hard and productive worker." During his allocution, defendant spoke proudly of his job and how it gave him a sense of worth.

Defendant married in September 2005, and he and his wife recently had a child. As indicated, defendant's wife also experienced substance abuse problems, but she, like defendant, made great strides in overcoming them. Defendant indicated that he and his wife supported one another in this endeavor, and she in turn made positive statements about him. Defendant had two adult children from a previous relationship, and during his allocution he spoke about his failures with them. However, he realized he now had a second chance to be a good father to his new child. Defendant's mother, disabled by a stroke, indicated that defendant was very helpful to her.

**C.  Purposes of Sentencing**

The guidelines recommended 24-30 months in prison in this case, after the departure. However, the statute of conviction permitted a sentence of probation, see 18 U.S.C. § 3553(a)(3), and under all of the circumstances I concluded that defendant deserved a chance

6

to continue the progress he had made. Sending him to prison now, when he had made such great strides, seemed counterproductive. Therefore, I imposed a sentence served in the community.

The offense was no doubt serious; heroin causes a tremendous amount of damage to the community. However, defendant's role in this particular offense was quite limited and motivated by his own addiction; he earned no profit. Therefore, I concluded that confinement in prison was not necessary to provide just punishment for defendant's particular conduct. See 18 U.S.C. § 3553(a)(2)(A).[2]

Defendant's record suggested a risk of recidivism, but given the remarkable progress he had made over the past two years – staying off drugs, steadily working, starting a new family – I found that risk greatly reduced. If he continued on this path, he presented no threat to the public and was not a risk to re-offend. See 18 U.S.C. § 3553(a)(2)(B) & (C). Defendant's efforts to cooperate with the government were also suggestive of a change in direction. In some cases, cooperation has an almost mercenary quality, but in defendant's case it appeared to represent a desire to break from his old ways. Defendant obviously had treatment needs, but he was dealing with those issues in the community, and I concluded that both defendant and the public were best served by permitting him to continue those efforts. See 18 U.S.C. § 3553(a)(2)(D).

Under all of the circumstances, I found a sentence of 5 years probation with a condition of six months home confinement sufficient but not greater than necessary. This sentence

---

[2]The guidelines provided some consideration for defendant's limited role in the offense under § 3B1.2, but they did not account for defendant's motive in involving himself – to obtain heroin for himself. Nor did they account for his post-offense rehabilitation.

7

provided a sufficient measure of punishment, structure and monitoring, while also taking into account the role of addiction in defendant's conduct, his limited involvement and lack of financial gain, and his significant post-offense efforts to rehabilitate himself.

## IV. CONCLUSION

Therefore, I placed defendant on probation for five years. This sentence allowed me to maintain a great degree of control over defendant to ensure that he stayed on the right path. See Gall v. United States, 128 S. Ct. 586, 595 (2007) ("Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty."). Further, as I warned defendant at sentencing, any violations could lead to revocation and a sentence of up to 30 years. See 18 U.S.C. § 3565(a)(2) (stating that upon revocation of probation the court may re-sentence the defendant under § 3553). This sentence varied somewhat from the guidelines after the departure, but because it was well-supported by the § 3553(a) factors it created no unwarranted disparity. See 18 U.S.C. § 3553(a)(6); see also Gall, 128 S. Ct. at 602 (upholding sentence of probation for drug offender who turned his life around). As conditions of probation, I ordered defendant to serve six months of home confinement, participate in a program of testing and treatment for substance abuse, and repay the buy money expended in the case. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 17th day of March, 2008.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

8